IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JONATHAN BARE, BARBARA VERA TORRES, and
MICHAEL GRASSMAN,

                     Plaintiffs,

    v.                                                                                            OPINION and ORDER

AL. RINGLING BREWING COMPANY, INC., AL.                      21-cv-642-jdp
RINGLING MUSEUM MANSION LLC, JOSEPH F.
COLOSSA, and DONALD G. HOROWITZ,

                     Defendants.

---

Plaintiffs Jonathan Bare and Barbara Vera Torres are a married couple who were employees of defendants Al. Ringling Brewing Company, Inc. and Al. Ringling Museum Mansion, LLC. Bare and Torres allege that defendant Joseph Colossa, the former president of the brewing company, subjected both of them to sexual harassment and then retaliated against them in numerous ways when they complained about it, including by terminating their employment and threatening to have Torres deported. They assert claims under Title VII of Civil Rights Act of 1964 for sex discrimination, national origin discrimination, and retaliation.

Bare and Torres also assert ten state-law claims. Most of these claims are simply different legal theories based on the same conduct and injuries as the Title VII claims. But two of the claims—minority shareholder oppression and breach of fiduciary duty—are based on Bare's status as a shareholder in the brewing company rather than any of the plaintiffs' employment status. Plaintiff Michael Grassman, also a shareholder, is asserting a claim for shareholder oppression only.

Defendants move to dismiss all of plaintiffs' state-law claims, contending that the court should not exercise supplemental jurisdiction under 28 U.S.C. § 1367 because the state-law

claims aren't sufficiently related to the federal claims. Dkt. 27. Plaintiffs oppose the motion on the ground that all of their claims arise out of the same case or controversy.

The court will deny defendants' motion in part and grant it in part. The facts that Bare and Torres will have to prove to prevail on most of their state-law claims overlap substantially with their discrimination and retaliation claims. And those claims are unlikely to add significant complexity to the case, so it makes sense to try those claims together. But the claims for shareholder oppression and breach of fiduciary duty are different. They are based on a different relationship, involve different facts and law, and even introduce a different plaintiff. The shareholder oppression claim in particular affects the interests of parties who aren't present and could require the court to dissolve the company. Under these circumstances, the court declines to exercise supplemental jurisdiction over the shareholder claims.

ALLEGATIONS OF FACT

The following allegations are taken from plaintiffs' complaint, and the court accepts them as true for the purpose of defendants' motion to dismiss.

In 2018, Bare was the general manager and vice president of the brewing company, which operates a brewery and restaurant in Baraboo, Wisconsin. Bare is also a minority shareholder, owning 29.9 percent of the company. Torres was an employee of both the brewing company and the museum, which runs tours of the former home of Al Ringling.[1]

Colossa was the president of the brewing company and is still a shareholder. Colossa began sharing sexually explicit photos and videos of Torres to company employees. He had

---

[1] *See* https://alringlingmansion.com/about-the-mansion/.

obtained the photos and videos from Torres's ex-husband without Torres's consent. Colossa also groped Torres multiple times. Colossa threatened to "have [Torres] deported" if she told his wife (Torres's sister) what he had done. Dkt. 25, ¶ 26.

In January 2020, Bare reported Colossa's misconduct to defendant Donald Horowitz, another shareholder and officer. After Horowitz told Colossa about Bare's allegations, Colossa "threatened Mr. Bare's life" in front of other employees multiple times. *Id.*, ¶ 32.

In September 2020, nine employees, including Torres, spoke to the police about Colossa. Torres told the police that Colossa had shared sexually explicit photos and videos of her and that she was of afraid of Colossa because he had been trying to touch her "in a sexual manner." *Id.*, ¶ 37. After Colossa's wife filed for divorce, Colossa blamed Bare, and Colossa made additional death threats against Bare.

Bare told Horowitz that he intended to seek a restraining order against Colossa. When Colossa found about it, he threatened to kill both Bare and Torres. Before Bare filed for a restraining order against Colossa, Colossa obtained his own temporary restraining order against Bare in April 2021, which meant that Bare was barred from coming onto company property. Colossa and Horowitz also terminated Bare as general manager. A week later, the court denied Colossa's petition for a restraining order and granted Bare's petition,

Colossa and Horowitz wanted to remove Bare as vice president, but they needed the vote of Griffin James, the fourth company director. Colossa and Horowitz falsely told James that Bare had been embezzling from the company, that he had been trying to "sabotage" the company by shutting off its utilities, that he had instructed employees not to show up for work, and that the company's bank "imminently intended to take an adverse act" against the company if Bare was not removed as vice president. *Id.*, ¶ 57. Colossa and Horowitz told

3

another shareholder that Bare had embezzled money from the company. *Id.*, ¶ 55. In May 2021, Colossa, Horowitz, and James voted to remove Bare as vice president.

Around the same time, Torres again went to the police. She told them that Colossa had touched her thighs and grabbed her crotch, buttocks, and breasts without consent, and that he had attempted to coerce her into having sex. In May 2021, Colossa and Horowitz terminated Torres' employment. Torres has not received owed wages of nearly $4,000.

Throughout 2021, Colossa and Horowitz falsely told members of the community, including the president of the chamber of commerce, that Bare had embezzled money from the company.

ANALYSIS

Plaintiffs' amended complaint includes 13 claims involving an assortment of different plaintiffs and defendants that vary from claim to claim:

1) Sex discrimination (Bare and Torres against the brewing company and the museum)

2) Retaliation (Bare and Torres against the brewing company)

3) Minority shareholder oppression (Bare and Grassman against the brewing company, Colossa, and Horowitz)

4) Breach of fiduciary duty (Bare against Colossa and Horowitz)

5) Wrongful termination (Bare and Torres against the brewing company)

6) Defamation (Bare against Colossa)

7) Unjust enrichment (Bare against the brewing company, Colossa, and Horowitz)

8) Quantum meruit (Bare and Torres against the brewing company, Colossa, and Horowitz)

9) Injury to business reputation (Bare against Colossa and Horowitz)

10) Invasion of privacy (Torres against Colossa, the brewing company, and the museum)

11) Assault and battery (Torres against Colossa)

12) Nonpayment of wages (Torres against the brewing company and the museum)

13) National origin discrimination (Torres against the brewing company and the museum)

Defendants don't challenge the merits of any of those claims in their motion to dismiss. Rather, the sole question is whether exercising jurisdiction over plaintiffs' state-law claims—claims 3) through 12)—is appropriate under 28 U.S.C. § 1367.

The general question under § 1367(a) is whether the state-law claims are "so related to [the federal claims] that they form part of the same case or controversy under Article III of the United States Constitution." The statute doesn't define the standard, and courts haven't done much better. A common judicial description is that the claims must share "a common nucleus of operative facts." *See, e.g*, *Wisconsin v. Ho–Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008); *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007). But, as the court of appeals acknowledged in *Prolite Builing Supply, LLC v. MW Manufacturers, Inc.*, that phrase "jiggles the vagueness problem around a little without solving it." 891 F.3d 256, 258 (7th Cir. 2018). "It tells us that 'enough' commonality makes for a controversy but does not dictate the solution to any case." *Id; see also* 15A *Moore's Federal Practice* § 106.24[9] (3d ed. 2021) ("[C]ourts commonly apply the [§ 1367(a)] standard to the facts before them and reach a conclusory result, with little or no analysis."). But the determination whether to exercise supplemental jurisdiction should be guided by "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

5

Even if the state and federal claims qualify under § 1367(a), "supplemental jurisdiction need not always be exercised." *Green Valley Investments v. Winnebago Cnty., Wis.*, 794 F.3d 864, 869 (7th Cir. 2015). Section 1367(c) lists four situations that justify a decision not to exercise supplemental jurisdiction, including if the state-law claim raises "novel or complex" issues, if the state-law claim "substantially predominates" over the federal claim, or if there are "compelling reasons" for declining jurisdiction.

Most of plaintiffs' state-law claims closely track the federal discrimination and retaliation claims. There is significant overlap in what plaintiffs must prove and in the remedies that are available to them for both sets of claims. The court will exercise supplemental jurisdiction over those claims, for reasons explained in the following paragraphs.

The court begins with the state-law claims related to plaintiffs' sex discrimination claim. Sex discrimination under Title VII includes severe or pervasive sexual harassment, such as nonconsensual sexual touching. *See Turner v. The Saloon, Ltd.*, 595 F.3d 679, 685–86 (7th Cir. 2010). Torres alleges that Collosa harassed her in violation of Title VII by groping her, which is also the basis for her assault and battery claim.[2] As plaintiffs point out, the court of appeals has previously held that assault and battery claims are sufficiently related to a federal harassment claim about the same conduct to support an exercise of jurisdiction under § 1367(a). *See Ammerman v. Sween,* 54 F.3d 423, 425 (7th Cir. 1995). Defendants acknowledge *Ammerman* in their reply brief, and they don't attempt to distinguish its holding as applied to Torres's assault and battery claim. So the court will retain jurisdiction over that claim.

---

[2] Plaintiffs don't explain the basis for *Bare*'s sex discrimination claim, but defendants don't seek dismissal of the claim, so the court won't consider that issue.

Plaintiffs don't develop a separate argument regarding which federal claim Torres's invasion of privacy claim relates to, and they don't expressly say in their complaint what the factual basis for the privacy claim is. But presumably it is Colossa's alleged sharing of sexually explicit photos and videos of Torres. Plaintiffs don't cite any case law showing that such conduct qualifies as sex discrimination generally or sexual harassment specifically, but it is reasonable to infer that it does, at least at the pleading stage. The general question under Title VII is whether the employer altered the terms and conditions of employment on the basis of a protected characteristic, including the employee's sex. *See* 42 U.S.C. § 2000e-2. Plaintiffs allege that Colossa shared the sexually explicit images to coworkers, which supports a view that Colossa altered Torres's work conditions. It's also reasonable to infer that Colossa's alleged conduct was motivated in part by Torres's sex. So the court will retain jurisdiction over the privacy claim too.

Title VII also prohibits employers from retaliating against a current or former employee for opposing sex discrimination by the employer. *See* 42 U.S.C. § 2000e-3; *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315–16 (7th Cir. 2011). Complaining about sexual harassment can qualify as opposition for the purpose of § 2000e-3. *See Fischer v. Avanade, Inc.,* 519 F.3d 393, 409–10 (7th Cir. 2008). Many of plaintiffs' state-law claims are simply instances of the alleged retaliation against Bare and Torres for complaining about Colossa's alleged sexual harassment of Torres. Specifically, plaintiffs allege that defendants terminated both of them from their jobs, which relates to Bare and Torres's wrongful termination claim. They also allege that defendants made damaging, false statements about Bare, which relate to the claims for defamation and injury to Bare's business reputation. *See Novoselsky v. Brown*, 822 F.3d 342, 348 (7th Cir. 2016) (exercising supplemental jurisdiction over defamation claim that arose out of

7

same facts as retaliation claim); *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 617 (7th Cir. 2001) (same). The claims for quantum meruit, unjust enrichment, and unpaid wages represent part of Bare and Torres's damages for the alleged retaliation.

In sum, most of plaintiffs' state-law claims are essentially state-law corollaries of plaintiffs' federal claims. Under these circumstances, it makes sense to keep those claims in the same case. *See* 15A *Moore's Federal Practice* § 106.24[5] (3d ed. 2021) (§ 1367(a) is satisfied "if the federal and state claims are merely alternative theories of recovery for the same injury based on the same facts").

The same cannot be said of plaintiffs' claims for shareholder oppression and breach of fiduciary duty. Although there may be some factual overlap with the federal claims, the shareholder oppression and fiduciary duty claims are conceptually and practically distinct from the federal claims. The federal claims are based entirely on Bare and Torres's status as employees; but these state-law claims are based on Bare and Grassman's status as shareholders. *See N. Air Servs., Inc. v. Link,* 2011 WI 75, ¶ 89, 336 Wis. 2d 1, 40, 804 N.W.2d 458, 477–78 ("A shareholder oppression claim is, by definition, a claim brought by an individual shareholder in his or her capacity as shareholder for injury done to his individual interests that arise out of his or her share ownership."). The claims are based on different duties, and they involve different legal standards. So there is a strong argument that the shareholder claims aren't part of the same case or controversy as the other claims under § 1367(a).

But even if there is sufficient commonality to satisfy § 1367(a), multiple provisions in § 1367(c) suggest that the court should decline to exercise supplemental jurisdiction over the shareholder claims. As for § 1367(c)(1)—novel and complex state-law issues—Bare and Grassman's shareholder oppression claim is both more complex and more unusual than

plaintiffs' other state-law claims. There are few Wisconsin cases defining what qualifies as shareholder oppression. But those cases generally involve injuries to the minority shareholder's financial interest in the company or control over the company. *See, e.g.*, *Jorgensen v. Water Works, Inc.*, 218 Wis. 2d 761, 776–77, 582 N.W.2d 98, 104 (Ct. App. 1998) (self-dealing dividends and removing plaintiffs from the board of directors). In this case, Bare and Grassman are asserting a broader understanding of oppression, including plaintiffs' allegations of death threats and harassment, raising novel questions about the scope of the law.

Section 1367(c)(2) asks whether the state-law claims will substantially predominate over the federal claims, "whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). In this case, one of the requested remedies for defendants' alleged oppressive conduct is to dissolve the brewing company under Wis. Stat. § 180.1430(2). That's a significantly more comprehensive remedy than the damages sought for plaintiffs' other claims. It requires careful consideration of issues other than just Bare and Grassman's interests, and it involves the rights of other shareholders who aren't parties to the case. *See* Dkt. 25, Am. Cpt., ¶ 9 (identifying three nonparty shareholders). Allowing plaintiffs to combine such a far-reaching claim with their employment-related claims would have the potential to overwhelm the proceedings.

Section 1367(c)(4) asks whether there are "exceptional circumstances" and "other compelling reasons for declining jurisdiction." In applying this provision, courts have looked to the values underlying § 1367 cited in *Gibbs* and *Carnegie-Mellon*: judicial economy, convenience, fairness, and comity. *See, e.g.*, *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011); *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 745 (11th Cir. 2006); *Montano*

9

*v. City of Chicago*, 375 F.3d 593, 602 (7th Cir. 2004). Courts also consider whether the state-law claims "would ordinarily be expected to [be] tr[ied] . . . all in one judicial proceeding." *Gibbs*, 383 U.S. at 725; *see also Parker*, 468 F.3d at 746–47.

The court wouldn't ordinarily expect to try a shareholder dispute and an employment dispute in the same lawsuit. The duties and legal standards involved are fundamentally different, which could lead to jury confusion on the breach of fiduciary duty claims. *See Gibbs*, 383 U.S. at 727 (likelihood of jury confusion in applying different state and federal legal theories may justify dismissing state-law claims). Combining the claims could also unfairly prejudice the defendants because evidence that is relevant to the employment-related claims won't necessarily be relevant to the shareholder claims and vice-versa. The court rather than a jury will have to decide the judicial dissolution claim, but that simply is another reason why combining that claim with the others will not further the interests of judicial economy. *See Lewis v. United States*, 812 F. Supp. 620, 624–25 (E.D. Va. 1992) (declining to exercise supplemental jurisdiction over state-law claim that would have to be tried by a jury when federal claims would be tried by the court).

The bottom line is that it simply doesn't make sense to keep the shareholder claims and the employment claims in the same lawsuit. Plaintiffs have not identified any other cases in which a federal court tried those types of claims together. If the court were to allow the shareholder claims and employment claims to proceed in federal court, the likely result would be to hold separate trials, which would defeat the purpose of retaining jurisdiction. The court will dismiss Bare and Grassman's claim for shareholder oppression and Bare's claim for breach of fiduciary duty.

ORDER

IT IS ORDERED that defendants motion to dismiss plaintiffs' state-law claims under 28 U.S.C. § 1367, Dkt. 27, is GRANTED in part and DENIED in part. The court declines to exercise supplemental jurisdiction over plaintiffs' claims for shareholder oppression and breach of fiduciary duty, so those claims are DISMISSED without prejudice. The shareholder oppression claim is plaintiff Michael Grassman's only claim, so he is also DISMISSED. The motion to dismiss is otherwise denied.

Entered June 28, 2022.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge